# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEGACY SEPARATORS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| vs ) | NO. CIV-14-0267-HE |
| ) | |
| HALLIBURTON ENERGY SERVICES, ) | |
| INC, *et al.,* ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Legacy Separators, LLC ("Legacy") filed this action against defendants Halliburton Energy Services, Inc. ("Halliburton") and J. Wayne Richards, alleging patent infringement and violations of the Oklahoma Uniform Trade Secrets Act, 78 Okla. Stat. § 88(B). Halliburton has moved to transfer venue pursuant to a forum selection clause and 28 U.S.C. § 1404(a). Plaintiff has responded, and the motion is at issue.

### Background

Legacy's managing member, Guy Morrison, is the inventor of various technologies used in the oil and gas industry, including "downhole gas separators." In April 2010, Legacy entered into a Master Supply Agreement ("MSA") with Oilfield Product Supply Corporation ("OPSC") to supply OPSC with downhole gas separators for which Legacy owned patents. The MSA required OPSC to purchase a minimum annual quota of Legacy's separators on an exclusive basis.

In November 2010, OPSC, with the approval of Legacy, assigned its rights under the MSA to Global Oilfield Services ("Global"). Defendant Richards was the President and

CEO of Global. Halliburton indicates, and plaintiff does not appear to dispute, that Global was purchased by Halliburton in October of 2011 and was merged into Halliburton in August of 2013. Plaintiff alleges that during the course of the stock purchase negotiations between Global and Halliburton, Global disclosed to Halliburton the existence of the MSA and other of Legacy's trade secrets subject to confidentiality under the MSA.

Legacy alleges that Global continued to purchase separators, but would then transfer the separators to Halliburton, which assumed full control over Global after the merger. Legacy alleges that sometime later, Halliburton acquired Legacy's parts supplier in China and informed Legacy that Halliburton would no longer sell it parts required for separators or purchase further separators. Finally, Legacy alleges that Global and Halliburton re-assembled and re-manufactured used separators in an effort to avoid paying Legacy for new separators under the terms of the MSA.

> The MSA contains a paragraph entitled "Governing Law and Disputes," which states:
>
> This Agreement shall be governed by, and construed in accordance with, the law of the State of Texas, regardless of the laws that might otherwise govern under applicable principles of conflicts of law. Any disputes arising out of or seeking to enforce this Agreement shall be subject to, and each Party and [Richards] hereby consents to, the exclusive jurisdiction of the courts located in the State of Texas. The Parties and [Richards] agree to submit themselves to any court situated in Harris County, Texas as venue for any dispute.

MSA para. 9.6 [Doc. #39-5, pg. 11]. Based on this forum selection clause, Halliburton has moved to transfer venue to the Southern District of Texas.

Discussion

Halliburton argues that this case should be transferred because it assumed all the rights

2

of Global under the MSA and the forum selection clause mandates exclusive jurisdiction in Texas for all disputes between the parties to the MSA. Legacy disagrees, arguing that Halliburton is not a party to the MSA, that Halliburton lacks standing to rely on the forum selection clause, that the forum selection clause only applies to disputes that arise out of the MSA (as opposed to all disputes between the parties), and that this dispute does not arise out of the MSA.

The threshold question is whether Halliburton stands in the shoes of Global such that Halliburton is entitled to enforce the MSA and its forum selection clause. Halliburton argues that when it merged with Global, it assumed all of Global's rights under the MSA. Legacy argues that any assignment of rights under the MSA requires the approval of the other party, and Legacy never approved of the assignment of the MSA from Global to Halliburton. It relies on paragraph 9.1 of the MSA, which provides in pertinent part:

> This Agreement and the rights hereunder may not be assigned by any Party hereto or the Inventor without the prior written consent of the other Party, except that Buyer may assign any of its rights and delegate any of its obligations under this Agreement to any affiliate of Buyer provided that such assignment or delegation does not relieve Buyer of its financial obligations under this Agreement. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the Parties and the Inventor. . . . Supplier shall not enter into any transaction changing the ownership or effective control of Buyer without prior written consent of Buyer.[1]

[Doc. #39-5, pg. 9]. Halliburton asserts that because it was an affiliate of Global, Global

---

[1] *For purposes of the agreement, "Supplier" means Legacy. "Buyer" means Global, as the permitted assignee of the original buyer, OPSC. "The Inventor" is Mr. Morrison.*

could transfer its rights under the MSA to Halliburton without the permission of Legacy and was, in any event, the successor in interest to Global by reason of the merger. Legacy responds Halliburton could assert rights under the agreement only if it was a foreseeable party at the time the agreement was formed. Legacy contends that Halliburton was not a foreseeable party because the MSA, according to Legacy, was specifically designed to keep its existence concealed from outside parties such as Halliburton.

The court concludes Halliburton has standing to assert the application of the forum selection clause in the circumstances existing here. First, the provisions of the MSA upon which Legacy principally relies are the restrictions on assignment included in paragraph 9.1. However, the circumstances here do not involve an explicit assignment of the MSA or of rights under it.[2] Rather, Halliburton's standing argument relies principally on its status as the successor in interest to Global by reason of the later merger, rather than as an assignee. Further, the paragraph includes this sentence as to successor liability: "The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the parties . . . ." The term "permitted" qualifies only the references to assignees, not successors, suggesting the absence of an approval requirement as to successors in interest other than assignees. Finally, paragraph 9.1's reference to change of control is instructive. Legacy argues in substance that Halliburton's acquisition of control

---

[2]*For that reason, it is unnecessary to resolve here whether Halliburton's purchase of the stock of Global would, at that point, qualify it as an "affiliate" of Global to which a permissible assignment might have been made without consent.*

4

over Global via the stock purchase, or perhaps the later merger, was a development subject to Legacy's approval. But that is not what the agreement provided. Rather, paragraph 9.1 imposed restrictions on any change of control in "Supplier" (i.e. Legacy) but there was no similar provision addressing changes of control in the "Buyer" (i.e. Global). It appears that when the parties wanted to impose restrictions based on change in control of a party, they knew how to do it. The MSA has no such language as to Global.

Legacy asserts various arguments to the effect that Halliburton cannot rely on the forum selection provision because of improper conduct on its part or because it would be unfair to permit it to do so. Among other things, it suggests that the improper conduct involved is Halliburton's acquisition of information as to the MSA before the merger occurred.[3] However, it is unclear to the court how that conduct (i.e. the acquisition of information during the due diligence process) can be said to be improper or fraudulent conduct by Halliburton. It may well have been a violation of the MSA for Global to disclose the information to Halliburton (and any liability for such a violation would presumably now be that of Halliburton, as the successor entity), as a part of the due diligence process or otherwise, but it does not suggest misconduct on Halliburton's part by asking for or receiving the information.

Legacy also seeks to avoid the application of the forum selection clause by suggesting that the MSA is void. The word "suggesting" is used advisedly, as Legacy makes it very

---

[3]*It cites to evidence suggesting Halliburton acquired knowledge of the existence of the MSA and its subject matter as part of its pre-purchase due diligence.*

clear it is not seeking a formal determination that the agreement is void. A formal determination of that issue would presumably involve the determination of an issue arising out of the MSA, to which the forum selection clause would apply, and plaintiff plainly seeks to avoid that result. While the court appreciates the skill with which plaintiff has sought to fashion this argument (not to mention the description of its claims) in an effort to avoid application of the forum selection clause, the court concludes the circumstances do not render the agreement void so as to preclude reliance on the clause.

In any event, the court concludes that Halliburton, as successor in interest to Global, has standing to assert the application of the forum selection clause.

The next question is whether the forum selection clause pertains to this dispute. As noted above, the relevant language in the MSA states:

> Any disputes arising out of or seeking to enforce this Agreement shall be subject to, and each Party and [Richards] hereby consents to, the exclusive jurisdiction of the courts located in the State of Texas. The Parties and [Richards] agree to submit themselves to any court situated in Harris County, Texas as venue for any dispute.

There are two types of forum selection clauses: mandatory and permissive. "The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is proper only in the designated forum.'" Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d 921, 926 (10th Cir. 2005) (citing Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 321 (10th Cir. 1997)). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id.* The Tenth Circuit has

adopted the majority rule for enforcing forum selection clauses: "where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft (""BMW"), 314 F.3d 494, 499 (10th Cir. 2002) (alterations in original) (quoting Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992)).

Applying this standard to the contract language, jurisdiction in Texas is mandatory for disputes that arise out of or seek to enforce the MSA. The sentence referring to jurisdiction contains the obligatory words "shall" and "exclusive." The sentence addressing venue, however, does not contain similar obligatory language, indicating that venue in Harris County is permissive. The language of the forum selection clause therefore mandates that all disputes arising out of or seeking to enforce the MSA be litigated exclusively in Texas, with Harris County being a permissible venue for those disputes or any others.

The next question is whether Legacy's claims either seek to enforce, or "arise out of," the MSA. Legacy argues that its claims are independent of the MSA, and that the MSA is only relevant as a defense. Halliburton counters that because the MSA grants it rights to Legacy's intellectual property, the MSA is "inextricably intertwined" with the claims.

"Several courts have stated that, when the forum selection clause governs only a dispute arising out of the contract containing the forum selection clause and the contract is relevant only as a defense, the form selection clause is inapplicable." Gen. Protecht Grp., Inc.

7

v. Leviton Mfg. Co., CIV 10-1020 JB/LFG, 2010 WL 5559750 at *23(D.N.M. Nov. 30, 2010); *see* Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007). "Other courts have found that a forum selection clause governing any dispute relating to or arising in relation to the agreement encompasses a dispute in which the agreement is raised as a defense." Gen. Protecht Grp., 2010 WL 5559750 at *24 (citing Schering Corp. v. First Databank, Inc., 479 F. Supp. 2d 468, 470-71 (D.N.J. 2007)). The forum selection clause involved here is not as broadly drawn as those in the cases discussing the "relating to" language. Instead, as noted above, the clause here only covers disputes arising out of or seeking to enforce the MSA. Legacy is not seeking to enforce the MSA in any explicit sense. Therefore, the forum selection clause applies only if the dispute involved here "arises out of" the MSA.

There does not appear to be any binding authority directly addressing whether patent claims should be viewed as arising out of an agreement such as the MSA. However, in General Protecht Group., Inc. v. Leviton Manufacturing Co., Inc., 651 F.3d 1355, 1359 (Fed. Cir. 2011), the Federal Circuit concluded that, in the circumstances existing there, such claims should be viewed as arising out of a licensing agreement. *See also* Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1331 (Fed. Cir. 2000). While the MSA is not an explicit licensing agreement, and is focused largely on the sale of the separators, responsibility for manufacturing them and the like, it is, in substance and at least in part, in the nature of a licensing agreement as to the patents. Following the approach of the Federal Circuit in General Protecht Group, the court concludes that Legacy's patent claim arises out of the MSA, and the forum selection clause applies to it.

Similarly, the court concludes Legacy's state law trade secrets claim also arises out of the MSA.[4] While Legacy is seeking to enforce rights under the Oklahoma Uniform Trade Secrets Act, it bases at least a portion of its claim on Halliburton's allegedly unlawful discovery and use of information made confidential by the MSA, including the existence of the MSA itself. *See* [Doc. #1, para 18] ("The MSA obligated OPSC to maintain secrecy of Plaintiff's confidential information, including the existence and substance of the MSA itself as well as Plaintiff's business and technical confidential information in the MSA . . . ."); [Doc. #32, pg. 25] ("Halliburton apparently decided it was entitled to the MSA and other of Legacy's valuable trade secrets without Legacy's permission . . . ."); [Doc. #45, pg. 8-9] ("The MSA provides that the existence and content of the MSA was Confidential Information that Legacy protected as its valuable trade secret information."). Because Legacy's claim involves information it asserts to be trade secrets, including the existence of the MSA itself, due at least in part to the requirement of confidential treatment under the MSA, the court concludes the trade secret claim must also be viewed as arising out of the MSA. As such, the forum selection clause is applicable to it.

As plaintiff's claims arise out of the MSA within the meaning of the forum selection clause, that clause applies. Where a valid forum selection clause exists, it must be "given

---

[4]"In order to prevail on [its trade secrets claims, plaintiff] must prove by a preponderance of the evidence the following elements: (1) the existence of a trade secret; (2) misappropriation of the secrets by Defendant; and (3) use of the secrets by the Defendant to the Plaintiff's detriment." Pre-Paid Legal Servs., Inc. v. Cahill, 924 F. Supp. 2d 1281, 1288 (E.D. Okla. 2013).

controlling weight in all but the most exceptional circumstances." Atlantic Marine Const. Co. Inc. v. U.S. Dist. Court, 134 S. Ct. 568, 579 (2013) (quoting Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, at 33 (1988)). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 581. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting Stewart Org., 487 U.S. at 31). Instead, "plaintiff's choice of forum merits no weight," and the court "should not consider arguments about the parties' private interest." *Id.* at 581-82. The only arguments a district court may consider are public-interest factors. *Id.* at 582. The burden falls on the plaintiff to show "that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581.

Applying that standard, Legacy has not established exceptional circumstances sufficient to warrant overriding the forum selection clause. While some of the public-interest factors arguably weigh in favor of keeping the case in this court, they are insufficient to meet the exacting standard articulated in Atlantic Marine.

For the reasons stated, the court concludes the forum selection clause of the MSA must be given effect here. Defendant Halliburton's motion to transfer venue [Doc. #22] is **GRANTED**. The clerk of court is directed to transfer this case to the United States District Court for the Southern District of Texas. Halliburton's motion for leave to file a supplemental brief [Doc. #48] is **STRICKEN AS MOOT**. As defendant Richards's

10

pending motion to dismiss [Doc. #57] is premised on a lack of sufficient contacts with Oklahoma, it is also **STRICKEN AS MOOT**.

    **IT IS SO ORDERED**.

Dated this 21st day of July, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE